[Civ. No. 56128. Second Dist., Div. Five. Apr. 21, 1980.]

GERALD T. OLIVET et al., Plaintiffs and Appellants, v.
FREDERICK FRISCHLING et al., Defendants and Respondents.

832

COUNSEL

Walter P. Christensen for Plaintiffs and Appellants.

Haight, Dickson, Brown & Bonesteel, Roy G. Weatherup, John W. Sheller and Williard M. Reisz for Defendants and Respondents.

OPINION

KAUS, P. J.—Plaintiffs Olivet, Marcus and Lucidi appeal from a judgment of dismissal of all causes of action alleged against defendants Frischling et al.

Plaintiffs' fourth amended complaint alleges as follows: Plaintiffs and all named defendants are members of Whittier Leasing Company, a general partnership formed to assist Whittier Hospital in its remodeling program and general financial well-being. To this end, the partnership has engaged in a number of sale/lease-back transactions with the hospital, whereby the partnership first purchases from the hospital certain pieces of medical equipment owned by it, and then leases these purchases back to the facility at rates lower than those obtainable through normal competitive bidding processes. Between 1975 and 1977, 54 such contracts were negotiated; the partnership's success[1] was due entirely to the fact that defendant-partners Frischling, Taylor Kraushaar (I), Akin, Hanten, Kurz and Springer were members of the "governing Board of Directors" of Whittier Hospital. Defendant-partner, Frischling was counsel to both Whittier Leasing Company and Whittier Hospital.

Sometime before February 1977, defendants Frischling, Taylor, Kraushaar (I) and Kraushaar (B), Akin, Hanten, Kurz, Springer and Jackson formed a competing partnership known as Friendly Hills Leasing Company (Friendly Hills). Together, these nine constituted the total board of directors of the hospital.[2] Further, defendant-partner-attorney Frischling also acted as attorney for this new entity. Thereafter, Whittier Hospital—acting, of course, through its board—concluded all of its lease-back transactions with Friendly Hills, to the total exclusion of Whittier Leasing Company.

Eventually, plaintiffs filed the lawsuit before us. In their first cause of action, they alleged that the nine defendants previously mentioned wrongfully conspired to interfere with Whittier Leasing's business relationship with Whittier Hospital. Their second count, against defendant Frischling only, sought damages for his participation in the conspiracy schemes, as well as for his alleged breach of fiduciary duty as counsel to Whittier Leasing, and for fraud. The third cause of action, directed against the previously mentioned defendants, as well as about 30 addi-

---

[1]This "success" translated into financial gain in a form of favorable tax benefits and income tax shelters for the members of Whittier Leasing.

[2]The distinction between the "governing" board and the full or total board is unclear. At various places in the record, "governing" board members are referred to as the "controlling" members of the board; at other points they are described as being "connected with Whittier Hospital in an administrative capacity." Further, they are alleged to "have the sole authority to act [i.e., 'enter into contracts'] on behalf of the hospital." On the other hand, the full board, also denominated the "Board of Trustees," is similarly characterized as having "complete control over who the hospital shall execute leases with."

tional partners, sought dissolution of the Whittier partnership, as well as an accounting, and recovery of damages, i.e., profits lost to Friendly Hills Leasing Company.

Defendants demurred—generally and specially[3] —to all causes of action. Their pleas were sustained without leave to amend and dismissal was thereupon ordered. This appeal ensued.

## DISCUSSION

On appeal, plaintiffs contend that the trial court misapplied the law in sustaining defendants' contention that no cognizable claims were, or could be stated against them. We agree.

■ Plaintiffs' first cause of action is predicated on the doctrine of civil conspiracy. We keep in mind, of course, that the real gist of such an action is not the conspiracy itself, but rather the damages suffered thereby: "It is the long established rule that a conspiracy, in and of itself, however atrocious, does not give rise to a cause of action unless a civil wrong has been committed resulting in damage. [Citations.]" (*Wise* v. *Southern Pacific Company* (1963) 223 Cal.App.2d 50, 64 [35 Cal.Rptr. 652].) Hence, to state an action for conspiracy, the complaint must allege (1) its formation and operation, (2) wrongful acts done pursuant thereto and (3) damages arising therefrom. (*Id.*, p. 64.)

■ Accordingly, the real substance of plaintiffs' complaint is the injury suffered as a result of defendants' intentional interference with their—plaintiffs—prospective economic advantage. "This is a tort theory of recovery...based on interference with a 'relationship' between parties irrespective of the enforceability of the underlying agreement....The actionable wrong lies in the inducement to break the contract or to sever the relationship ...." (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 822 [122 Cal.Rptr. 745, 537 P.2d 865].) This cause of action requires five essential components: (1) an economic relationship containing the probability of future economic benefits accruing to the plaintiffs, (2) defendants' knowledge of the existence of that relationship, (3) defendants' intentional commission of acts designed to disrupt the relationship, (4) actual disruption thereof and (5) damages proximately caused thereby. (*Id.*, p. 827.) Thus, plaintiffs here insist that defendants unlawfully interfered with Whittier Leasing's on-going business relationship with Whittier Hospital by first conspiring to form and

---

[3]Only the general demurrers are urged upon us here.

then in fact so forming a competing enterprise, and thereafter intentionally disrupting and severely harming plaintiffs' valuable economic advantage.

 Defendants' primary argument in support of the court's ruling on their demurrer is that plaintiffs may not pursue this action because essentially it attempts to hold the Board of Directors of Whittier Hospital liable for interference with its own economic relations. Defendants note that while it is true that plaintiffs have apparently sued the partners of Friendly Hills, it is nevertheless the case that Friendly Hills is made up of no one but those who constitute the Whittier Hospital Board of Directors. They point out that the board—or at least its governing board—is by law entrusted with the hospital's basic management and control, has primary responsibility for all acts taken in the hospital's ordinary course of business, and is in fact the only conduit through which Whittier Leasing's sale/lease-back transactions could be and were consummated. They thus contend that plaintiffs' error lies in having directed their complaint against the very individuals upon whom their putative on-going business relationship depends, thereby contravening the rule that a cause of action for the tort of interference with a prospective economic advantage will not lie against a party to the relationship upon which the advantage is based. (Cf., *Dryden v. Tri-Valley Growers* (1977) 65 Cal.App.3d 990, 999; Prosser, Law of Torts (4th ed. 1971) § 129.)

Assuming, arguendo, that Whittier Hospital and its board of directors cannot be viewed as separate legal entities—a question we need not decide here—defendants' contention with regard to the straight tort of "interference" may be correct. We are, however, not only faced with an underlying wrong, but confront an independent action for civil conspiracy. The distinction is crucial, for it is accepted, at least in California, that an action for conspiracy to induce a breach of contract will in fact lie against a party to the agreement, regardless of the fact that the party would not be directly liable for its breach as such. (*Wise, supra*, 223 Cal.App.2d at p. 71.) In so holding, the court observed that to hold a contracting party liable in tort not only comports with the general principle that all who are involved in a common scheme are jointly and severally responsible for the ensuing wrong, but also reenforces good morals. (*Id.*, at pp. 71-72. But see Cooper, *Civil Conspiracy And Interference With Contractual Relations* (1975) 8 Loyola L.A. L.Rev. 302.) In sum, defendants' primary point is fatally infirm.

Defendants also maintain, however, that because plaintiffs' proposed action is one at law, it may not be prosecuted until the partnership has been equitably dissolved and its affairs completely accounted for. They reason that "[i]f the damages claimed belong to the partnership as a whole—as they would in the present first cause of action for interference—no action at law may be brought by only some partners for their own benefit before dissolution and an accounting [because] until an accounting is had it cannot be known whether the [partners] suing may not in fact be indebted to the partnership, or to the other members of the [partnership] or that there may not be outstanding [partnership] debts sufficient to exhaust the [partnership] assets."

Defendants correctly state the general rule of law denying legal actions with respect to partnership transactions; however, the rule is subject to a number of exceptions (see generally, 6 Witkin, Summary of Cal. Law (8th ed. 1974) Partnership, § 33, pp. 4282-4283), including one to the effect that an action at law against a copartner may be maintained when its gravamen is a claim of conspiracy. (Witkin, *id.*, p. 4282; 14 Cal. Practice § 248:1; 168 A.L.R. 1088.) The rationale for this exception lies in the fact that the injurious behavior is thought of as completely beyond the pale of any proper partnership activity: while the partnership may furnish the stage for the tortious conduct, its scenario does not encompass the acts which constitute the instant wrongs. (See *Laughlin* v. *Haberfelde* (1946) 72 Cal.App.2d 780, 790 [165 P.2d 544].)

Next, defendants insist that no cause of action for "interference" was stated because plaintiffs failed to allege the existence of a continuing economic relationship between Whittier Leasing and Whittier Hospital giving rise to the probability that in the future the partnership would in fact reap real economic benefits therefrom. They assert that "[t]here is not even a contract for continuing business between Whittier Hospital and the Whittier partnership, let alone one granting the partnership an exclusive stream of business. In such circumstance, the partnership possesses no protected expectancy of obtaining the hospital's exclusive future business...." Again, we cannot agree with defendants' analysis.

As we read the complaint, plaintiffs have indeed pleaded the existence of the requisite relationship, both as to an expectancy of future contracts and to the hospital's intent prior to defendants' inter-

vention. Plaintiffs have averred, "that the Whittier Leasing Company has been formed with a term ending on June 30, 1990 and since all of the members of the partnership are either physicians on the staff of Whittier Hospital or are directly employed by Whittier Hospital, the leasing agreement would reasonably continue until June 30, 1990 on a renewal basis as has been done in the past. . . .

"That as a direct and proximate result of the. . .conduct of the defendants, and each of them, Whittier Hospital has refused to renegotiate leases with the Whittier Leasing Company. That these defendants constitute the Board of Trustees of Whittier Hospital and as such have complete control over who the hospital shall execute leases with and conspired to only lease to their own company and to the exclusion of plaintiffs.

"The defendants. . .are connected with Whittier Hospital in an administrative capacity and the refusal to renew is because of the conspiratorial conduct and intentional conduct on the part of the defendants, and each of them, to induce the breach of a business relationship." Reasonably construed, the foregoing suggests no less than that the nature and makeup of both the Whittier partnership and Whittier Hospital's Board of Directors were such that each expected all sale/lease-back transactions to be consummated between itself and the other, to the exclusion of all third parties. Such allegations are manifestly sufficient to withstand defendants' demurrer.

In the alternative, defendants assert that even if the cause of action is sufficiently pleaded, it is still defective because it reveals on its face a complete defense of justification.[4]

Here again, defendants base their argument on the fact that the named defendants constitute Whittier Hospital's board of directors; in this instance, however, they declare that by virtue of this "confidential relationship," board members were absolutely privileged to induce the hospital to break off its relationship with Whittier Leasing at any time.

This argument severely misinterprets the purpose and scope of the so-called "manager's privilege." (See *Becket* v. *Welton Becket & Associates* (1974) 39 Cal.App.3d 815 [114 Cal.Rptr. 531].) The privilege to

---

[4] "'Justification is an affirmative defense and may not be considered as supporting the trial court's action in sustaining a demurrer unless it appears on the face of the complaint.'" (*A. F. Arnold & Co.* v. *Pacific Professional Ins., Inc.* (1972) 27 Cal.App.3d 710, 714 [104 Cal.Rptr. 96].)

induce an otherwise apparently tortious breach of contract is extended by law to further certain social interests deemed of sufficient importance to merit protection from liability.[5] Thus, a manager or agent may, with impersonal or disinterested motive, properly endeavor to protect the interests of his principal by counseling the breach of a contract with a third party which he reasonably believes to be harmful to his employer's best interests. (See Prosser, Law of Torts (4th ed. 1971) § 129, pp. 943-944.) On the other hand, "[i]t is well established . . . that a person is not justified in inducing a breach of contract simply because he is in competition with one of the parties to the contract and seeks to further his own economic advantage at the expense of the other." (*Imperial Ice Co. v. Rossier* (1941) 18 Cal.2d 33, 36 [112 P.2d 631].) Obviously, when a manager induces a breach in the hopes that he himself might fill the resultant economic void, he acts not as a servant, i.e., as one upholding his master's best interests, but rather as a naked competitor, devoid of the protections accorded those who labor under standards of fidelity, good faith and fiduciary responsibility.

Thus, it is patent that no complete justification for defendants' action appears on the face of plaintiffs' allegations: indisputably, it is reasonably inferable therefrom that defendants were acting solely in order to obtain for themselves the advantages formerly enjoyed by Whittier Leasing as a whole. Concededly, other more benign conclusions may also be drawn from the stated allegation. Nonetheless, the foregoing is sufficient to dispose of defendants' contention, since, of course, a demurrer must be overruled if the complaint alleges facts which, viewed most favorably to the plaintiff, state even one possible cause of action. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 796 et seq.)

We recognize, of course, that defendants may be able to justify their conduct by showing as a matter of fact that their actions were intended solely for the benefit of Whittier Hospital, and not for personal gain. Certainly, we do not suggest that plaintiffs enjoy the right to compel Whittier Hospital to deal exclusively with Whittier Leasing, no matter what the circumstances may be. Thus, defendants are wrong when they

---

[5]For example, "a person is justified in inducing the breach of a contract the enforcement of which would be injurious to health, safety, or good morals. [Citations.] [Similarly] [t]he interest of labor in improving working conditions is of sufficient social importance to justify peaceful labor tactics otherwise lawful, though they have the effect of inducing breaches of contract between employer and employee or employer and customer. [Citations.]" (*Imperial Ice Co. v. Rossier* (1941) 18 Cal.2d 33, 35-36 [112 P.2d 631].)

insist that the necessary effect of a judgment in plaintiffs' favor would be to "bind the defendants in their role as hospital directors to grant all future leases to the Whittier partnership." Our holding is in no way intended to impinge upon the board's power and duty (see Corp. Code, § 309) to award leases in the manner it deems most beneficial to the hospital; it merely forbids the allotment of contracts according to the measure of personal benefit accruing to defendants therefrom.

█ Finally, defendants urge us to sustain the court's ruling on their demurrer to plaintiffs' first count, because they fear that if a minority of partners "were able to recover [damages], they would obtain for themselves the entire amount owing to the partnership as a whole. Because their share of partnership funds is greatly less [*sic*] than the whole…they would be unjustly enriched." █ █ To this objection we need merely observe that inasmuch as all members of Whittier Leasing have been named in the complaint, and are presumably before the court[6] we perceive no potential for unjust enrichment.

█ In sum, plaintiffs have sufficiently pleaded their first cause of action for conspiracy to interfere with their economic relationship with Whittier Hospital; the trial court's contrary conclusion may not stand.

Plaintiffs' second cause of action, against Attorney Frischling for conspiracy, breach of fiduciary duty and fraud, is in large part merely a reiteration of the substance of count 1. Additionally, however, it contains what plaintiffs in their brief characterize as allegations that he wrongfully engaged in a "deliberate and misleading course of conduct…[by involving himself as an attorney] on both sides of the leasing transactions and enjoying a controlling interest in each side for his own personal gain to the detriment of many others."[7]

In his brief, Frischling raises the question whether plaintiffs may properly predicate a cause of action on his professional conduct, and, indeed, whether any relevant attorney-client relationship has even been

---

[6] The record does not suggest otherwise.

[7] This charge is evidently based on the injunction set forth in rule 5-101 of the Rules of Professional Conduct, to wit: "A member of the State Bar shall not enter into a business transaction with a client or knowingly acquire an ownership, possessory, security or other pecuniary interest adverse to a client unless (1) the transaction and terms in which the member of the State Bar acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in manner and terms which should have reasonably been understood by the client, (2) the client is given a reasonable opportunity to seek the advice of independent counsel of the client's choice on the transaction, and (3) the client consents in writing thereto."

shown to exist. Under the circumstances, however, we need not discuss the intricacies of his professional duties and immunities. No pleading isolates Frischling's acts as attorney from those as board member and partner. It follows from our resolution of count 1 that count 2 also states a cause of action against Frischling.

 Finally, plaintiffs' third cause of action appears to be entirely appropriate.

Corporations Code section 15032 provides: "(1) On application by or for a partner the court shall decree a dissolution whenever:...(d) A partner wilfully or persistently commits a breach of the partnership agreement, or otherwise so conducts himself in matters relating to the partnership business that it is not reasonably practicable to carry on the business in partnership with him,...(f) Other circumstances render a dissolution equitable...."

It is well settled that a partner who agrees to give his personal attention to the partnership business may not engage in any other business which gives him an interest adverse to that of the firm, or which prevents him from giving to the firm business all the attention which would be advantageous to it. (*Dennis* v. *Gordon* (1912) 163 Cal. 427, 433 [125 P. 1063].) Hence, a partner who does so act may reasonably be said to have breached his implicit agreement to refrain from undermining the partnership's best interests. Clearly, the facts here alleged reflect that certain of the partners of Whittier Leasing have elected to compete with the firm itself and to thus breach one of the partnership's basic underlying tenets. We think it therefore indisputable that plaintiffs, should they be able to prove their allegations, would be entitled to a court-ordered dissolution of Whittier Leasing pursuant to either subdivision (1)(d) or (1)(f) of section 15032. Further, an accounting pursuant to Corporations Code section 15022 would then follow as a matter of course, since "an account is a necessary incident to the dissolution ...." (48 Cal.Jur.3d, Partnership, § 119, p. 602, and cases cited therein.)

Accordingly, the judgment is reversed.

Ashby, J., and Hastings, J., concurred.