**LOS ANGELES AIRWAYS, INC., a corporation, Plaintiff-Appellant,**

v.

**Chester C. DAVIS, Defendant-Appellee.**

**LOS ANGELES AIRWAYS, INC., a corporation, Plaintiff-Appellee,**

v.

**Chester C. DAVIS, Defendant-Appellant.**

**Nos. 80–5060, 5082.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 8, 1981.

Decided Sept. 17, 1982.

Robert E. Hinerfeld, Murphy, Thornton, Hinerfeld & Cahill, Los Angeles, Cal., for plaintiff-appellant.

Howard M. Jaffe, Lewis, D'Amato, Brisbois & Bisgard, Los Angeles, Cal., for defendant-appellee.

Before ELY and REINHARDT, Circuit Judges, and CORDOVA*, District Judge.

REINHARDT, Circuit Judge.

Plaintiff-Appellant in this diversity action appeals from an order granting summary judgment for the defendant based on the defendant's claim of privilege.[1] Defendant-Appellee cross appeals from orders of the district court denying leave to file a third party complaint and to join Summa Corporation as a third party defendant in this action. Because we conclude that the district court properly granted the motion for summary judgment, we need not address the issues raised by the defendant.

I.

Appellant Los Angeles Airways (hereinafter "LAA") brought this action against Appellee Chester C. Davis for tortious interference with its contractual relationship with Summa Corporation (formerly Hughes Tool Company) and Hughes Air Corporation. LAA specifically alleged that Davis wrongfully, intentionally, and maliciously induced Howard Hughes to cause Summa Corporation and Hughes Air Corporation to breach an oral agreement with LAA to purchase all of LAA's assets and liabilities. Davis' answer denied the existence of an oral agreement to purchase LAA and claimed, by way of affirmative defense, that if his conduct did induce a breach of the alleged agreement, he was privileged to act in such manner. During the period of negotiations between LAA, Summa, and

Hughes Air Corporation, Davis served as general counsel for Summa, as attorney for Howard Hughes and Hughes Air Corporation, and as an officer and director of Hughes Air Corporation. Davis subsequently became a director of the Summa Corporation.

Seven years after the initiation of this action and shortly before the matter was scheduled for trial, Davis filed a motion for summary judgment based solely on the affirmative defense of privilege to induce breach of contract. Davis based his claim of privilege on his status as attorney for Summa, Hughes Air Corporation, and Howard Hughes, as an officer, director, or agent of Summa and Hughes Air Corporation, and as an agent of Howard Hughes. Davis' motion was supported by his affidavit in which he stated that all communications with Howard Hughes regarding the acquisition of LAA were undertaken at the request of one of his three principals. Davis denied advising anyone to breach any agreement regarding the proposed acquisition and denied communicating incorrect information to Hughes regarding the acquisition. However, for the purposes of the motion for summary judgment only, Davis assumed that an oral agreement existed between LAA and the Hughes' interests and that any breach of the agreement was caused by Davis' advising and informing his principals.

In its opposition to Davis' motion for summary judgment, LAA asserted that the privilege of a fiduciary to interfere in his principal's contractual relations does not apply when the means used are unlawful. LAA asserted that in response to a request by Howard Hughes to determine whether any commitments had been made in the LAA acquisition negotiations, Davis falsely reported to Hughes that he was unable to

---

* The Honorable Valdemar A. Cordova, United States District Judge for the District of Arizona, sitting by designation.

1. Plaintiff's notice of appeal states only that plaintiff appeals from the order granting summary judgment. However, on appeal, plaintiff argues that earlier orders of the district court denying leave to amend its complaint were er-

roneous. We need not address plaintiff's arguments as to the denial of the leave to amend because we conclude that the privilege claimed by Davis applies with equal force to claims of inducing breach of contract and the proposed amended theory of interference with an advantageous business relationship.

obtain meaningful information on the commitments made to LAA from Robert Maheu, Chief Executive Officer of Hughes Nevada Operations, Francis T. Fox, Director of Aviation for Hughes Tool Company, or Edward P. Morgan, a Washington D. C. attorney representing the Hughes' interests in the negotiations. LAA also asserted that Davis sent a financial report to Hughes at his request on the financial condition of LAA without explaining that much of LAA's financial difficulty arose from the delay in the proposed acquisition. LAA then asserted that .

> Davis' purpose in doing this was to convince Hughes to refuse to permit the Purchase Contract to be signed and the acquisition thereby consummated, in order to cause LAA to collapse into bankruptcy and commence litigation against the Hughes' interests. This was in turn intended by Davis to undermine Robert Maheu's position while at the same time enhancing Davis' own position. It was also intended to permit Hughes to later acquire LAA's assets through a purchase at liquidation prices.

On appeal, LAA argues that the privilege does not apply when a fiduciary acts to promote his own self-interest rather than the interests of his principal.[2] LAA contends that intent and motive are questions of fact that cannot be resolved on a motion for summary judgment.

In support of its opposition to the motion for summary judgment, LAA lodged with the court the entire depositions of Davis,

2. In the court below, LAA opposed the motion for summary judgment on the ground that the means used by Davis in advising Hughes were unlawful. "[P]laintiff contends Chester C. Davis misled and deceived Howard Hughes with respect to details of a commitment to purchase the assets of Los Angeles Airways...." Plaintiff's Opposition to Motion for Summary Judgment, at 3. Although LAA explained in the court below that Davis' reason for allegedly deceiving Hughes was to undermine Maheu's position in the Hughes empire, LAA did not contend in the trial court that such intent would defeat Davis' claim of privilege. On appeal, however, LAA has abandoned its earlier position that Davis cannot claim the privilege because the means used were unlawful,

Fox, Maheu, and Morgan and 41 exhibits from the pre-trial conference order. LAA's attorney attached his own affidavit which stated that he had read LAA's opposition to the motion for summary judgment and that it was his "representation to this Court that the statements contained (in LAA's moving papers) are in fact supported by the evidence ...."

On the basis of the above record, the district court granted Davis' motion for summary judgment.

## II

In reviewing the motion for summary judgment, we must view the evidence and the factual inferences drawn from the evidence in the light most favorable to the party opposing the motion for summary judgment. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Pegasus Fund, Inc. v. Laraneta*, 617 F.2d 1335, 1339 (9th Cir. 1980). On appeal, LAA asserts that because the privilege claimed by Davis is qualified and not absolute, there is a triable issue of fact as to Davis' intent in responding as he did to Howard Hughes' requests regarding the LAA negotiations. Our review of the motion for summary judgment is guided by the law of privilege in California.[3] We must determine if, under the facts presented and the law of privilege in California, Davis' intent in advising Howard Hughes presents a triable issue of material fact.

and now claims that Davis was not protected by the privilege because he acted with the intent to elevate his standing in the Hughes empire by undermining Robert Maheu's position.

Even if LAA had argued on appeal that Davis' actions in advising Hughes were unlawful and therefore defeated the privilege, we would still affirm the order of the district court. LAA presented no evidence in the court below which raised a triable issue of fact as to the propriety of the means used by Davis in advising Hughes.

3. Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332. The law of the forum state therefore controls the resolution of the dispute. *Kabatoff v. Safeco Ins. Co.*, 627 F.2d 207, 209 (9th Cir. 1980).

## A. The Law of Privilege in California

The determination of whether the privilege applies in a particular instance requires a two step analysis. The first step is to determine if the relationship between the parties involves the type of interests that the privilege is designed to protect. The second step is to determine whether, in light of the nature and importance of the above relationship, the advisor's intent in inducing the breach was proper. This second step in the analysis is necessary because, as LAA correctly contends, the privilege is qualified and not absolute. Where the intent is not proper, the privilege is lost.

### 1. The existence and scope of the privilege

California law has long recognized a cause of action against a defendant who, without a privilege to do so, intentionally induces a third person to breach his contract with another. *Herron v. State Farm Mutual Ins. Co.*, 56 Cal.2d 202, 205, 14 Cal. Rptr. 294, 363 P.2d 310 (1961); *Imperial Ice Co. v. Rossier*, 18 Cal.2d 33, 112 P.2d 631 (1941). *See generally Restatement (Second) of Torts* § 766 (1978) (hereinafter referred to as *Restatement*); W. Prosser, *Law of Torts* § 129 (4th ed. 1971) (hereinafter referred to as Prosser). California similarly recognizes a cause of action for interference with an advantageous business relationship which does not rise to the status of a contractual relationship. *Buckaloo v. Johnson*, 14 Cal.3d 815, 122 Cal.Rptr. 745, 537 P.2d 865 (1975). The tort of interference with an advantageous business relationship, although of more recent origin, appears to be subject to the same defense of privilege that insulates a party from liability for inducing a breach of contract.[4] *Lowell v. Mother's Cake & Cookie Co.*, 79 Cal.App.3d 13, 18, 144 Cal.Rptr. 664, 668 (1978); *Restatement* § 770. *See Olivet v.*

*Frischling*, 104 Cal.App.3d 831, 840, 164 Cal. Rptr. 87, 91 (1980).

The existence and scope of the privilege to induce a breach of contract must be determined by reference to the societal interests which it is designed to protect. *Olivet v. Frischling*, 104 Cal.App.3d at 841, 164 Cal.Rptr. at 91–92; *Restatement* § 767(c), (d) & (e). The privilege exists whenever a person induces a breach of contract through lawful means in order to protect an interest that has a greater social value than the mere stability of the particular contract in question. *Imperial Ice Co. v. Rossier*, 18 Cal.2d at 35, 112 P.2d at 632. The privilege is designed in part to protect the important interests served by the confidential relationship between a fiduciary and his principal. *See id.* at 38, 112 P.2d at 634; *Olivet v. Frischling*, 104 Cal.App.3d at 841, 164 Cal. Rptr. at 92; *Pratt v. Film Technicians Local 683*, 260 Cal.App.2d 545, 563, 67 Cal. Rptr. 483, 495 (1968); *Marin v. Jacuzzi*, 224 Cal.App.2d 549, 553, 36 Cal.Rptr. 880, 883 (1964); *Lawless v. Brotherhood of Painters*, 143 Cal.App.2d 474, 478, 300 P.2d 159, 162 (1956); *Restatement* § 770 comment b; Prosser § 129 at 943 n.98.

LAA does not dispute the fact that the requests from Hughes were directed to Davis in his capacity as a fiduciary, either as attorney for the Hughes interests or as an agent, officer or director of those interests. Neither LAA nor Davis has clearly identified in what capacity Davis responded to Hughes' requests. Nor has either party suggested how the existence or scope of the privilege is affected by a determination as to which capacity Davis was acting in when he responded to Hughes' inquiries—attorney or business advisor. Davis argues that he is protected in either capacity, while LAA responds that *if* the scope of the privi-

---

**4.** LAA has rather strenuously contended that the district court erred in denying it leave to amend its complaint to state a cause of action for interference with an advantageous business relationship. LAA further contends that the court below should have considered the motion for summary judgment as though the complaint did state a cause of action for interfer-ence with an advantageous business relationship. However, in light of the fact that California courts have recognized that the privilege applies to claims of interference with an advantageous business relationship, the theory on which LAA proceeded against Davis would not have changed the result on the motion for summary judgment.

lege varies with the capacity in which Davis acted, this court should assume that Davis acted in the capacity with the narrowest privilege.

■ If Davis were acting in his fiduciary capacity as an agent, officer or director of the Hughes' interests, he could clearly claim the protection of the privilege in California, subject to its qualifications, based on his relationship with the Hughes' interests. The privilege is sometimes described in California law as the "manager's privilege." *Olivet v. Frischling*, 104 Cal.App.3d at 840–41, 164 Cal.Rptr. at 91–92; *Marin v. Jacuzzi*, 224 Cal.App.2d at 553, 36 Cal.Rptr. at 880. The manager's privilege has most frequently arisen in the context of employer-employee relations. Thus, a manager is said to be privileged to induce the breach of an employment contract between his employer and another employee. *See, e.g., Marin v. Jacuzzi*, 224 Cal.App.2d at 554, 36 Cal.Rptr. at 881 (complaint did not state a cause of action where it alleged that general manager of corporation maliciously discharged employee). The privilege also extends to non-employees who serve as business advisors or agents and is applicable to advice relating to contracts generally, not just employment agreements. *See, e.g., Olivet v. Frischling*, 104 Cal.App.3d at 841, 164 Cal.Rptr. at 91–92 (privilege claimed by members of board of directors and attorneys for corporation, contract involved purchase and leaseback of equipment); *see also* Prosser § 129 at 943 n.98. A business advisor may counsel his principal to breach a contract that he reasonably believes to be harmful to his principal's best interests. *Olivet v. Frischling*, 104 Cal.App.3d at 841, 164 Cal.Rptr. at 92.

■ Davis would have occupied at least as significant a fiduciary role if he provided his advice as an attorney rather than as a business advisor. *Alkow v. State Bar*, 3 Cal.3d 924, 935, 92 Cal.Rptr. 278, 479 P.2d 638 (1971); *Fund of Funds, Ltd. v. Arthur Andersen & Co.*, 567 F.2d 225, 233–34 (2d Cir. 1977). *See also Model Code of Professional Responsibility* EC 4–1, 4–5 (1976). Attorneys are frequently called upon by their clients to provide advice regarding the validity of contracts and the consequences of their breach. An attorney can claim the protection of the privilege to induce breach of contract, subject to its qualifications, when he provides his advice in the course of his representation of a client. Davis could thus also base his claim of privilege on his status as attorney for Hughes and the Hughes' interests.

■ As noted above, LAA argues that if the availability of the privilege depends on which role Davis was acting in when he advised Hughes, i.e., attorney or business advisor, we should resolve any ambiguity as to Davis' role against him. It is clear in this case, however, that Davis had a qualified privilege to advise breach of contract in his capacity as either attorney or business advisor for Hughes. Because Davis would have been protected in either capacity, we need not consider whether there is a difference in the scope of the privilege or which privilege is applicable to an advisor who acts in two different capacities for one principal.

2. Intent: qualification on the exercise of the privilege

■ The protection of the privilege may be lost if the advisor acts with improper intent. *See Olivet v. Frischling*, 104 Cal.App.3d 831, 164 Cal.Rptr. 87 (1980). In determining whether an advisor's intent will result in the loss of the privilege, it is necessary to evaluate his intent in light of the societal interests which the privilege is designed to promote. *See Restatement* § 767, comment on clause (b). LAA argues that because intent is a highly subjective question, it is inappropriate to decide the issue of intent on a motion for summary judgment. We agree with LAA's general statement of the law. Where there is a dispute as to the advisor's intent, summary judgment cannot be used to resolve questions of material fact. However, in this case LAA claims that Davis' intent was to cause LAA to collapse into bankruptcy and commence litigation against the Hughes' interests. This was in turn in-

tended by Davis to undermine Robert Maheu's position while at the same time enhancing Davis' position. It was also intended to permit Hughes to later acquire LAA's assets at liquidation prices. Even fully accepting LAA's statement of Davis' intent, we conclude that Davis' conduct was protected by the privilege. Thus no triable issue of material fact exists.

LAA relies heavily on the recent California case of *Olivet v. Frischling*, 104 Cal. App.3d 831, 164 Cal.Rptr. 87 (1980), to support its argument that because the protection of the privilege is contingent in part on Davis' intent, the motion for summary judgment was improperly granted. In *Olivet*, the court rejected the argument that a complete defense of privilege was established on the face of a complaint. The complaint charged that the directors and attorney of Whittier Hospital had intentionally interfered with plaintiff's prospective economic advantage in order to obtain certain economic benefits for themselves. The defendants and the plaintiffs were all partners in the Whittier Leasing Company, a partnership formed to purchase equipment from Whittier Hospital and lease it back to the hospital at favorable rates. The defendants, the directors and attorney for the hospital, subsequently formed another partnership, Friendly Hills Leasing Company, which did not include the plaintiffs as partners. The defendants, in their capacities as directors and attorney for the hospital, then caused the hospital to terminate its business relationship with the Whittier Leasing Company and do business exclusively with their own business entity, the Friendly Hills Leasing Company. The lower court sustained a demurrer to the complaint on the ground that the complaint on its face showed that the hospital's directors and attorney had a privilege to interfere with an advantageous business relationship.

In reversing the lower court, the court of appeal stated:

> The privilege to induce an otherwise apparently tortious breach of contract is extended by law to further certain social interests deemed of sufficient importance to merit protection from liability. Thus, a manager or agent may, with impersonal or disinterested motive, properly endeavor to protect the interests of his principal by counseling the breach of a contract with a third party which he reasonably believes to be harmful to his employer's best interests. (See Prosser, Law of Torts (4th ed. 1971) § 129, pp. 943–944.) On the other hand, "[i]t is well established ... that a person is not justified in inducing a breach of contract simply because he is in competition with one of the parties to the contract and seeks to further his own economic advantage at the expense of the other." (*Imperial Ice Co. v. Rossier* (1941) 18 Cal.2d 33, 36, 112 P.2d 631.) Obviously, when a manager induces a breach in the hopes that he himself might fill the resultant economic void, he acts not as a servant, i.e., as one upholding his masters best interests, but rather as a naked competitor, devoid of the protections accorded those who labor under standards of fidelity, good faith and fiduciary responsibility.

*Id.* at 840–41, 164 Cal.Rptr. 87 (footnote omitted).

There is a critical difference between the alleged intent of the defendants in *Olivet* and LAA's description of Davis' intent in advising Hughes in this case. In *Olivet*, the defendants allegedly caused Whittier Hospital to breach a contract with a third party so that the defendants could take over the contract with the hospital themselves; there was no allegation that the defendants acted in any way intended to benefit their principal. As the court in *Olivet* stated, "it [was] reasonably inferable ... that defendants were acting solely in order to obtain for themselves the advantages formerly enjoyed by [their principal] ...." *Id.* at 841, 164 Cal.Rptr. 87. In this case, however, LAA contends that Davis' advice was intended, *inter alia*, to secure a benefit for Hughes: the acquisition of LAA at a "distress price." The fact that Davis also hoped that the advice would promote his standing in the eyes of Hughes does not negate Davis' intent to benefit his principal. Thus, *Olivet* does not compel the conclusion,

as LAA contends, that Davis cannot claim the protection of the privilege. Neither *Olivet* nor any other reported California decision has explicitly addressed the situation in which an advisor is alleged to have acted with a "mixed motive," i.e., with the intent to benefit his employer's interest as well as his own. We must therefore resolve this question as we believe the California Supreme Court would if faced with the same facts. *Commercial Union Ins. Co. v. Ford Motor Co.*, 640 F.2d 210, 212 (9th Cir.), *cert. denied*, 454 U.S. 858, 102 S.Ct. 310, 70 L.Ed.2d 154 (1981).

We conclude that where, as here, an advisor is motivated in part by a desire to benefit his principal, his conduct in inducing a breach of contract should be privileged. The privilege is designed to further certain societal interests by fostering uninhibited advice by agents to their principals. The goal of the privilege is promoted by protecting advice that is motivated, even in part, by a good faith intent to benefit the principal's interest.

We believe that advice by an agent to a principal is rarely, if ever, motivated purely by a desire to benefit only the principal. An agent naturally hopes that by providing beneficial advice to his principal, the agent will benefit indirectly by gaining the further trust and confidence of his principal. If the protection of the privilege were denied every time that an advisor acted with such mixed motive, the privilege would be greatly diminished and the societal interests it was designed to promote would be frustrated. We do not believe that the California Supreme Court would so eviscerate the privilege, and we decline to do so.

Although we need not reach the question, we also seriously doubt that a desire to advance one's own career with an employer (even at the expense of a fellow employee's) would in any event constitute the type of motivation that causes loss of the privilege.

The order of the district court granting summary judgment is AFFIRMED.