141 F.3d 1174
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Burt CABANAS; BMC--the Benchmark Management Company, Inc.,
d/b/a Benchmark Management Company, Plaintiffs--Appellants,
v.
GLOODT ASSOCIATES, INC; Peter H. Gloodt; Karen Bradbury
Johnson; Peter A. Moegenburg, Defendants--Appellees.
 No. 96-17081.
DC No. CV-94-01481-DFL/PAW.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 13, 1998.
Decided Mar. 3, 1998.
 
 Appeal from the United States District Court for the Eastern District of California David F. Levi, District Judge, Presiding.
 Before D.W. NELSON, REINHARDT, and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Benchmark Management Company and its founder and president Burt Cabanas (collectively "Benchmark") appeal the district court's summary judgment dismissal of its diversity tort action alleging defamation, tortious interference with contract, conspiracy, negligence, and intentional infliction of emotional distress. Benchmark manages the Resort at Squaw Creek (the "Resort"), a resort property that was appraised by Gloodt Associates, a real estate appraisal firm, and claims, inter alia, that the appraisal contains defamatory statements and was negligently performed. The district court determined that Benchmark's defamation claims are barred by the advisor's privilege of California Civil Code § 47(c), and that Benchmark's other claims fail as a matter of law. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 We review the district court's grant of summary judgment de novo. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). We must determine, viewing the evidence in the light most favorable to Benchmark, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Id.
 
 
 4
 I. Benchmark's defamation claims are barred by the qualified privilege of California Civil Code § 47(c).
 
 
 5
 Subsection 3 of California Civil Code § 47(c) provides that a privileged publication is one made "in a communication, without malice, to a person interested therein, by one who is requested by the person interested to give the information." Because Gloodt has established that the appraisal was prepared for Security Pacific National Bank (the "Bank"), an interested party, Benchmark bears the burden of proving that Gloodt made the allegedly defamatory statements contained within the appraisal with malice. See Lundquist v. Reusser, 7 Cal.4th 1193, 1213, 31 Cal.Rptr.2d 776, 875 P.2d 1279 (1994). The privilege is lost if Benchmark can prove that the publication was "motivated by hatred or ill will toward plaintiff, or by any cause other than the desire to protect the interest for the protection of which the privilege is given." Brewer v. Second Baptist Church, 32 Cal.2d 791, 797, 197 P.2d 713 (1948) (citations omitted). Alternatively, the privilege is lost "by a publication of defamatory matter for an improper purpose," or "by the publisher's lack of belief, or of reasonable grounds for belief, in the truth of the defamatory matter." Id.
 
 
 6
 A. The appraisal was not motivated by hatred or ill will toward Benchmark.
 
 
 7
 In arguing that Gloodt acted out of malice, Benchmark first posits that Gloodt was motivated by its belief that an extremely critical appraisal would result in higher payment and higher praise from the Bank. We have specifically held, however, that the advisor's privilege is not lost where the advisor is alleged to have acted with a "mixed motive," i.e., with the intent to benefit his principal's interest as well as his own. Los Angeles Airways, Inc. v. Davis, 687 F.2d 321, 328 (9th Cir.1982). The 400-page appraisal, a product of thorough research, clearly evidences an intent to promote the Bank's interest in making more informed underwriting decisions related to its existing loan, which was secured by the Resort property.
 
 
 8
 Benchmark next argues that malice can be inferred from the contents of the appraisal, which state, inter alia, that Benchmark is "not competent." This statement, lifted out of context, does not fairly represent the appraisal's findings. The appraisal actually states that Benchmark is not a "competent manager of the subject ski resort." This assertion directly addresses an issue highly relevant to the Bank's interests; it avoids sweeping characterizations regarding Benchmark's general competence.
 
 
 9
 Benchmark also makes the argument that malicious intent can be inferred from the fact that the information presented in the appraisal was not "stated fully and fairly with respect to the plaintiff." Brewer, 32 Cal.2d at 799, 197 P.2d 713. Benchmark points out that in its first year of operation, "the Resort was plagued by a number of external problems beyond the control of Benchmark." As Benchmark concedes, however, the appraisal does take several, if not all, of these "external problems" into consideration. Moreover, even if Gloodt did fail to attach appropriate weight to these circumstances, that in and of itself is insufficient to establish the existence of malice. See Roemer v. Retail Credit Co., 3 Cal.App.3d 368, 372, 83 Cal.Rptr. 540 (1970) ("[M]ere negligence in investigation of the facts ... is not alone enough to constitute malice. It is only when the negligence amounts to a reckless or wanton disregard for the truth, so as to reasonably imply a wilful disregard for or avoidance of accuracy, that malice is shown.").
 
 
 10
 B. The appraisal was not a publication of defamatory matter for an improper purpose.
 
 
 11
 Benchmark further argues that the advisor's privilege does not apply because the appraisal was made for "an improper purpose." Brewer, 32 Cal.2d at 797, 197 P.2d 713. Benchmark contends that the appraisal was inappropriately critical, citing a comment by a subsequent appraiser that the criticism found in the Gloodt report was of an "extreme" kind "rarely seen in hotel appraisals." Benchmark further claims that Gloodt's "improper purpose" is evident from the fact that it catered to the Bank's instructions to "hammer Benchmark," and to "state" that "Benchmark is incompetent."
 
 
 12
 Once again, Benchmark seems to have misunderstood the applicable legal standard. First, even extremely negative criticism falls squarely within the scope of the privilege as long as the information was motivated by a "good faith intent to benefit" the Bank's interests. Los Angeles Airways, 687 F.2d at 328. Furthermore, even if the Bank did influence the form or content of the appraisal by its involvement in the editorial process, that in and of itself does not demonstrate improper purpose on Gloodt's part. The advisor's privilege protects Gloodt's compliance with the Bank's requests as long as Gloodt intended to provide information in which the Bank had an interest.
 
 
 13
 C. Gloodt did not lack belief, or reasonable grounds for belief, in the truth of the defamatory matter.
 
 
 14
 Benchmark next maintains that the advisor's privilege is lost because Gloodt had "no reasonable grounds for belief" in the appraisal's truth. Brewer, 32 Cal.2d at 797, 197 P.2d 713. Benchmark attempts to show that the appraisal is inconsistent with statements contained within Gloodt's deposition. Benchmark contrasts a statement in the appraisal that Benchmark is not a "competent manager of the subject ski resort" with Gloodt's statement in his deposition, "Now I'm not saying that they're not suited to manage and market the Resort ... I'm not saying they're not suited to do it." In reading the cited passage from the deposition in context, however, it is evident that Gloodt was simply explaining that he meant the appraisal to convey the very narrow conclusion that Benchmark is incompetent with respect to the particular task of managing the Resort at Squaw Creek, and that the appraisal did not address Benchmark's general competence. In short, there is no contradiction involved here, and no evidence that the privilege should not apply because Gloodt did not believe the statements contained within the appraisal.
 
 
 15
 D. The privilege was not lost because Gloodt published the appraisal to a non-interested party.
 
 
 16
 In a final effort to defeat the advisor's privilege, Benchmark attempts to show that Gloodt exceeded the scope of the privilege by communicating the allegedly defamatory statements to Randall Verrue, a "non-interested" party. After a careful review of the record, we have determined that the evidence offered by Benchmark fails to create a triable issue as to whether Verrue saw the appraisal before renegotiating Benchmark's contract.
 
 
 17
 II. There were no genuine issues of material fact regarding whether Gloodt tortiously interfered with Benchmark's management contract.
 
 
 18
 Benchmark offers two different theories in support of its position that Gloodt tortiously interfered with its management contract with the owners of the Resort. First, Benchmark contends that Gloodt gave the appraisal to Randall Verrue, an owner representative, causing the owners to negotiate the new management fee structure with the report's criticisms in mind. As explained above, the record contains no evidence suggesting that Gloodt gave Verrue a copy of the appraisal.
 
 
 19
 Second, Benchmark argues that Gloodt tortiously interfered with its contract on the theory that even if the owners never saw the appraisal, Cabanas reasonably believed that they did, and he accordingly agreed to a less favorable contract. We agree with the district court that Gloodt's conduct in preparing the appraisal is privileged under California Civil Code § 47(c). See Los Angeles Airways, Inc. v. Davis, 687 F.2d 321, 326 (9th Cir.1982) (citing Olivet v. Frischling, 104 Cal.App.3d 831, 841, 164 Cal.Rptr. 87 (1980)); see also Aalgaard v. Merchants Nat'l Bank, 224 Cal.App.3d 674, 684, 274 Cal.Rptr. 81 (1990). As discussed above, there is no evidence in the record suggesting that Gloodt did not act with the intent to secure a benefit for the Bank.
 
 
 20
 There are no California cases directly holding that advisors are protected by the privilege when they give advice to a non-contracting party with a direct financial interest in the performance of the contract. Cf. Los Angeles Airways, 687 F.2d at 326 ("A business advisor may counsel his principal to breach a contract that he reasonably believes to be harmful to his principal's best interests.") (citation omitted). Nevertheless, we agree with the district court that if faced with the issue, the California Supreme Court would extend the advisor's privilege beyond those who advise contracting parties, to those who advise parties with a direct financial interest in the performance of the contract at issue.
 
 
 21
 The reason that the privilege extends to those who advise parties with a direct financial interest in the performance of the contract is clear from the logic of this court's opinion in Los Angeles Airways:
 
 
 22
 The existence and scope of the privilege to induce a breach of contract must be determined by reference to the societal interests which it is designed to protect. The privilege exists whenever a person induces a breach of contract through lawful means in order to protect an interest that has a greater social value than the mere stability of the particular contract in question. The privilege is designed in part to protect the important interests served by the confidential relationship between a fiduciary and his principal.
 
 
 23
 687 F.2d at 325 (citations omitted). Here, the privilege exists because the interest it is protecting is of "greater social value" than the stability of the contract in question. The Bank clearly has a strong financial interest in the performance of Benchmark's management contract: Its $53 million loan to the Owners was secured by a deed of trust on the Resort property. Because the property's highest value was as an operating resort, the Bank had a direct stake in the quality of the Resort's management.
 
 
 24
 III. No genuine issues of material fact exist regarding whether Gloodt conspired to commit a tort.
 
 
 25
 In a single paragraph in its brief, Benchmark presents its conclusory argument that there is an issue of fact as to whether Gloodt conspired to commit a tort. There is no evidence in the record that Gloodt participated in a conspiracy of any kind.
 
 
 26
 IV. Benchmark's negligence claims were properly dismissed because Gloodt did not owe Benchmark a duty.
 
 
 27
 The threshold element of an action for negligence "is the existence of a duty to use due care toward an interest of another that enjoys legal protection against unintentional invasion." Bily v. Arthur Young & Co., 3 Cal.4th 370, 397, 11 Cal.Rptr.2d 51, 834 P.2d 745 (1992) (citations omitted). Under California law, recovery is allowed only in rare instances for negligent interference with contract or prospective economic advantage. See Fifield Manor v. Finston, 54 Cal.2d 632, 635, 7 Cal.Rptr. 377, 354 P.2d 1073 (1960). However, "[w]here a special relationship exists between the parties, a plaintiff may recover for loss of expected economic advantage through the negligent performance of a contract although the parties were not in contractual privity." J'Aire Corp. v. Gregory, 24 Cal.3d 799, 804, 157 Cal.Rptr. 407, 598 P.2d 60 (1979) (citations omitted). The existence of a "special relationship" is determined by examining the following six criteria:
 
 
 28
 (1) the extent to which the transaction was intended to affect the plaintiff;
 
 
 29
 (2) the foreseeability of harm to the plaintiff;
 
 
 30
 (3) the degree of certainty that the plaintiff suffered injury;
 
 
 31
 (4) the closeness of the connection between the defendant's conduct and the injury suffered;
 
 
 32
 (5) the moral blame attached to the defendant's conduct; and
 
 
 33
 (6) the policy of preventing future harm.
 
 
 34
 24 Cal.3d at 804, 157 Cal.Rptr. 407, 598 P.2d 60; Bily, 3 Cal.4th at 397, 11 Cal.Rptr.2d 51, 834 P.2d 745. After reviewing and weighing all six criteria, we agree with the district court that no special relationship exists between Benchmark and Gloodt.
 
 
 35
 As for the first factor, we find that the appraisal was not intended to affect Benchmark, even if the purpose of the appraisal was to advise the Bank about whether Benchmark should be retained as manager. The appraisal was designed for the Bank's underwriting purposes; it was not directed to influence the relationship between the Resort's Owners and Benchmark.
 
 
 36
 The second factor identified by the J'Aire court is the only one that weighs in Benchmark's favor. It was indeed foreseeable that a report criticizing Benchmark's competence with respect to its management of the Resort might lead to an unfavorable renegotiation of Benchmark's fees. However, as the California Supreme Court recently maintained in Bily v. Arthur Young & Co., "the mere presence of a foreseeable risk of injury to third persons" should not be treated "as sufficient, standing alone, to impose liability for negligent conduct." Bily, 3 Cal.4th at 399, 11 Cal.Rptr.2d 51, 834 P.2d 745; see also Nally v. Grace Community Church, 47 Cal.3d 278, 297, 253 Cal.Rptr. 97, 763 P.2d 948 (1988).
 
 
 37
 With respect to the third factor, it is not at all certain that Benchmark suffered injury as a result of the management contract renegotiation. In view of the fact that the new contract merely aligned management fees with profit performance, it was not definite at the time of the renegotiation that economic loss would result, nor is it definite that economic loss will continue to result.
 
 
 38
 As for the fourth factor identified in J'Aire to consider in determining the existence of a special relationship, there is little connection between the allegedly negligent appraisal and the harm allegedly suffered (lost profits resulting from the renegotiation of the agreement between Benchmark and the owners of the Resort). It is unclear exactly how much, if any, negotiation strength was lost as a result of the fact that Cabanas believed that Verrue had the report. Cabanas testified that he would have yielded 25-30 percent in management fees even if he had never known of the existence of the appraisal. Moreover, it seems likely that the contract that emerged from the renegotiation was predominantly shaped by the fact that prospective investors were adamant that the restructured management agreement should provide greater incentive for Benchmark to perform well by tying management fees directly to the Resort's financial success.
 
 
 39
 With regard to the fifth factor, no moral blame can be attached to Gloodt's appraisal. Even the part of the appraisal that Benchmark points to as the most offensive--the statement that Benchmark is not a "competent manager of the subject ski resort"--is not evidence of morally blameworthy conduct. The statement avoids gratuitous character slashing; it is straightforward advice to the Bank about matters that directly affect its interests.
 
 
 40
 Finally, as to the sixth factor, public policy instructs against recognizing a duty here, as there is a strong policy against imposing a fear of negligence liability on appraisers. The information offered by appraisers has been recognized as socially valuable information, and is for that reason protected by a qualified privilege in California. See Los Angeles Airways, Inc. v. Davis, 687 F.2d 321, 328 (9th Cir.1982).
 
 
 41
 In sum, we find that no special relationship exists between Gloodt and Benchmark, and that Benchmark's negligence claims were appropriately dismissed by the district court.
 
 
 42
 IV. There is no record evidence to support Benchmark's claim for intentional infliction of emotional distress.
 
 
 43
 The tort of intentional infliction of emotional distress requires that the plaintiff prove "[e]xtreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress." KOVR-TV, Inc. v. Superior Court, 31 Cal.App.4th 1023, 1028, 37 Cal.Rptr.2d 431 (1995) (internal quotations and citation omitted). "Outrageous" conduct is conduct "so extreme as to exceed all bounds of that usually tolerated in a civilized community." Id. (internal quotations and citation omitted). Benchmark argues that there is a genuine issue of material fact as to whether Gloodt intentionally inflicted emotional distress in view of Lukens' comment that the appraisal criticized Benchmark "to an extreme rarely seen in hotel appraisals." The mere fact that Gloodt's appraisal reflected an unusually high level of criticism is insufficient to constitute a ground for an emotional distress action, especially in light of the Resort's extremely poor performance in 1991.
 
 
 44
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3