783 F.2d 644
 54 USLW 2478, 1986-1 Trade Cases 66,949
 Richard L. BROWN and Charles Butterfield, Plaintiffs-Appellants,
v.
DONCO ENTERPRISES, INC.; Donald J. Courte; Maxine M.
Courte; Santana, Inc.; W. Houser Canter;
Richard Glover; Larry J. Shad, Defendants,
Rand E. Kruger, and Borowitz and Goldsmith, Defendants-Appellees.
 No. 84-6076.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 21, 1985.
Decided Feb. 14, 1986.
 
 Dana R. Kolter (argued), Louisville, Ky., for plaintiffs-appellants.
 Edward Stopher, Robert M. Brooks (argued), (Rand E. Kruger & Borowitz and Goldsmith), Louisville, Ky., for defendants-appellees.
 Before: KEITH and KRUPANSKY, Circuit Judges, and JOINER, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants Richard L. Brown (Brown) and Charles Butterfield (Butterfield) appealed the district court's order granting summary judgment in favor of defendants-appellees Rand E. Kruger and the law firm of Borowitz and Goldsmith in this antitrust action.
 
 
 2
 Plaintiffs Brown and Butterfield are former franchisees of Joe's Catering, Inc., a mobile industrial catering business. In their complaint, Brown and Butterfield alleged that Joe's Catering and its various owners engaged in a conspiracy to enforce an illegal tying arrangement in violation of 15 U.S.C. Secs. 1 et seq. and 14. Also named as defendants were appellees attorney Rand E. Kruger and the law firm of Borowitz & Goldsmith, of which he was a member, all of whom served as legal counsel for Joe's Catering and its principals.
 
 
 3
 The plaintiffs' complaint alleged that the attorney defendants engaged in a conspiracy to file and threaten lawsuits in the courts of Kentucky so as to coerce, intimidate and compel plaintiffs and other franchisees to purchase pre-packaged food products exclusively from Joe's Catering at substantially higher prices than the franchisees would have been required to pay in the absence of the alleged unlawful conduct. Plaintiffs further charged that Kruger and Borowitz & Goldsmith drafted letters and threatened and filed lawsuits in furtherance of the illegal conspiracy. The complaint did not allege that the attorney defendants served as active participants in formulating the policy of Joe's Catering, Inc.
 
 
 4
 Plaintiffs' complaint was filed in the United States District Court for the Western District of Kentucky on February 2, 1983. On December 14, 1983, the attorney and non-attorney defendants filed a joint motion to stay discovery for the limited purpose of permitting the court to determine if the attorneys were proper party defendants in this action. After a pretrial conference on January 5, 1984, the district court granted the stay of discovery.
 
 
 5
 On January 13, 1984 defendants Kruger and Borowitz & Goldsmith filed this motion for summary judgment. On November 8, 1984, the court granted the attorney defendants' motion, concluding that the plaintiffs' complaint failed to allege that Kruger and Borowitz & Goldsmith acted beyond their role as legal counsel to their client Joe's Catering.
 
 
 6
 On appeal, plaintiffs Brown and Butterfield argue that the defendant attorneys are personally liable under the antitrust laws for actions undertaken while serving as counsel for Joe's Catering, Inc. It is undisputed that a corporation's officers and agents may be held individually liable for corporate actions that violate the antitrust laws if they authorize or participate in the unlawful acts. United States v. Memphis Retail Package Stores Association, 334 F.Supp. 686, 689 (W.D.Tenn.1971).
 
 
 7
 At the outset, the court recognizes that the conduct proscribed by the antitrust laws is often difficult to distinguish "from the gray zone of socially acceptable and economically justifiable business conduct." United States v. United States Gypsum Co., 438 U.S. 422, 440, 98 S.Ct. 2864, 2875, 57 L.Ed.2d 854 (1978). Relying upon this obscure line between proper and improper business conduct, one court has concluded that personal liability under the antitrust laws should only attach where the defendant has actively participated in "inherently wrongful conduct." Murphy Tugboat v. Shipowners & Merchants Tugboat Co., 467 F.Supp. 841, 843 (N.D.Cal.1979). Individual liability under the antitrust laws can be imposed only where corporate agents are actively and knowingly engaged in a scheme designed to achieve anticompetitive ends. To support a determination of liability under this standard, the evidence must demonstrate that a defendant exerted his influence so as to shape corporate intentions.
 
 
 8
 In applying these principles to corporate counsel, the court must be mindful that attorneys ordinarily act in response to their clients directives. When acting at the behest of a client, an attorney is required to "resolve in favor of his client doubts as to the bounds of the law." Model Code of Professional Responsibility EC 7-3. The Code of Professional Responsibility further states that, in meeting his duty to zealously prosecute his client's cause, an attorney may "urge any permissible construction of the law favorable to his client, without regard to his professional opinion as to the likelihood that his construction will ultimately prevail." Model Code of Professional Responsibility EC 7-4. Accordingly, an attorney acting solely on behalf of his client cannot be found individually liable under the antitrust laws if he, himself, does not intentionally further anticompetitive goals.
 
 
 9
 Attorneys are not, however, immunized from antitrust liability. Rather, an attorney may be found individually liable under the antitrust laws only if he exceeds his role as legal adviser and becomes an active participant in formulating policy decisions with his client to restrain competition. Thus, to subject an attorney to individual liability under the antitrust laws, the plaintiff must plead and prove that the defendant attorney exerted his power and influence so as to direct the corporation to engage in the complained of acts for an anticompetitive purpose.
 
 
 10
 In reaching this decision, this court notes that its conclusions are supported by the few reported decisions confronting the issue. In Tillamook Cheese and Dairy Association v. Tillamook County Creamery Association, 358 F.2d 115 (9th Cir.1966), the court considered the liability of the general counsel for the defendant creamery association. The district court had granted summary judgment in favor of the defendant attorney. The Ninth Circuit reversed, finding that the record joined genuine factual issues as to whether the defendant's role was that of a legal adviser or an active participant in policy decisions. The court explained its conclusion that "legal advisers" are not subject to antitrust liability:
 
 
 11
 The individuals through whom a corporation acts and who shape its intentions can be held liable on a charge of attempted monopolization. United States v. Lorain Journal Co., N.D.Ohio, 92 F.Supp. 794, 800 aff'd, 342 U.S. 143, 72 S.Ct. 181, 96 L.Ed. 162; Bergjans Farm Dairy Co. v. Sanitary Milk Producers, E.D.Mo., 241 F.Supp. 476, 486; see also Kentucky-Tennessee Light & Power Co. v. Nashville Coal Co., W.D.Ky., 37 F.Supp. 728, 738.
 
 
 12
 We do not believe that this rule can be applied to the counsel for a corporation whose activity is brought into question, if the role of the counsel was only that of a legal adviser. This would be true even if, as counsel, he mistakenly advised corporate officers that a particular course of conduct would not violate section 2. But if he goes beyond that role and, acting by himself or jointly with others, makes policy decisions for the corporation, then he subjects himself to liability for attempted monopolization as in the case of any executive officer of the company performing a similar function.
 
 
 13
 Id. at 118. See also Invictus Records v. American Broadcasting Companies, 98 F.R.D. 419, 430 (E.D.Mich.1982) (Although attorneys were vigorous and persistent on behalf of their client, they were acting as legal advisors and thus, fell within Tillamook rule.); Ashley Meadows Farm v. American Horse Show Association, 1983-2 Trade Cases p 65,653 (S.D.N.Y.1983) (Zealous prosecution of disciplinary charges did not raise attorney's involvement to the level of an independent conspirator.)
 
 
 14
 Plaintiffs argue that the district court erred in granting summary judgment to the defendant attorneys without permitting discovery proceedings to develop the intention of the attorneys and other elements of antitrust violations. However, further augmentation of the factual record through discovery would not have aided plaintiffs in responding to defendants' motion for summary judgment. In their complaint, plaintiffs failed to allege that the attorney defendants made policy decisions on behalf of their client or in any other way motivated Joe's catering to engage in litigation for an anticompetitive purpose. Indeed, the main thrust of defendants' allegations and argument in the district court was that the plaintiffs did not allege that the attorney defendants stepped beyond their role as legal advisers. Thus, although styled as a motion for summary judgment, appellees' motion is functionally the same as a motion to dismiss for failure to state a claim. See, e.g., 10 Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d Sec. 2713 (1983). Viewing the motion as such, the court cannot conclude that the district court erred in granting summary judgment.
 
 
 15
 Accordingly, the judgment of the district court is hereby AFFIRMED.
 
 
 
 *
 United States Senior District Judge from the Eastern District of Michigan, sitting by designation