[No. D006262. Fourth Dist., Div. One. May 31, 1989.]

EUGENE V. KLEIN, Plaintiff and Appellant, v.
OAKLAND RAIDERS, LTD., et al., Defendants and Appellants.

**COUNSEL**

Cotchett & Illston, Joseph W. Cotchett, Frank M. Pitre, John L. Fitzgerald, Karen Karpen, Luce, Forward, Hamilton & Scripps and E. Miles Harvey for Plaintiff and Appellant.

Alioto & Alioto, Joseph L. Alioto, Robert C. Baxley, Lynberg & Watkins, Charles A. Lynberg, Lascher & Lascher and Edward L. Lascher for Defendants and Appellants.

**OPINION**

**KREMER, P. J.**—Defendants Oakland Raiders, Ltd., and Allen Davis appeal judgment after jury trial favoring plaintiff Eugene V. Klein on his complaint for malicious prosecution. Klein appeals an order granting a new trial unless he consented to reduction of damages. We reverse the judgment with directions to the superior court to enter judgment favoring the Raiders and Davis. We dismiss as moot Klein's appeal from the conditional order granting new trial.

## I

### FACTS

In 1978 the Los Angeles Memorial Coliseum Commission (L.A. Coliseum) brought suit in federal district court alleging the National Football League's (NFL) Rule 4.3 was an unlawful restraint of trade in violation of the Sherman Act. Rule 4.3 required unanimous approval of all NFL teams for relocation of a franchise to the home territory of another team. The

district court found no justiciable controversy existed because no NFL team had committed to move to Los Angeles.

In late 1978 the NFL amended its Rule 4.3 to require approval by only three-quarters of NFL members for a franchise move into another team's home territory.

In 1979 Davis, the managing general partner of the Raiders NFL franchise, began discussing with the L.A. Coliseum the possibility of relocating the Raiders from Oakland to Los Angeles.

In January 1980, believing agreement with Davis to be imminent, the L.A. Coliseum reactivated its federal lawsuit against the NFL. The L.A. Coliseum sought to enjoin the NFL from preventing the Raiders' move.

In March 1980 Davis and the L.A. Coliseum signed a memorandum of agreement outlining the terms of the Raiders' relocation to Los Angeles. Over Davis's objection that Rule 4.3 violated antitrust laws, the NFL teams voted against the move.

In May 1980 the L.A. Coliseum renewed its federal court action against the NFL and its member clubs by filing a second amended and supplemental complaint for injunction and damages under antitrust laws.

In July 1980 the Raiders became aligned as a party plaintiff in the L.A. Coliseum's federal court lawsuit. The Raiders cross-claimed against the NFL, its member teams including the limited partnership Chargers Football Company (Chargers), and various individuals including the Chargers' sole general partner Klein. The Raiders' cross-claim alleged Klein and the other cross-defendants conspired in violation of antitrust laws to prevent the Raiders from competing in the Los Angeles professional football market. The Raiders alleged cross-defendant Klein was "the president of cross-defendant San Diego Chargers" and one of three "principal conspirators" who used the NFL constitution and bylaws "to further their own anticompetitive plans." The Raiders' cross-claim also alleged tortious interference with contractual relationships or prospective advantage.

On May 28, 1981, Klein suffered a heart attack while testifying in the federal lawsuit.

In June 1981 the federal district court granted Klein's motion for directed verdict on the Raiders' cross-claim for conspiracy and interference. The court stated the Raiders had not presented substantial evidence upon which a reasonable jury could find Klein as an individual conspired or interfered. The court declined to direct a verdict on the interference claims against the NFL and its member clubs.

In May 1982, after trial the jury returned a verdict favoring the L.A. Coliseum and the Raiders on the antitrust claim. The jury also found for the Raiders on their claim for breach of the implied promise of good faith and fair dealing.

In June 1982 the federal district court issued judgment on the liability issue permanently enjoining the NFL and its member clubs from interfering with transfer of the Raiders franchise from Oakland to the L.A. Coliseum. The NFL and its member clubs appealed. The Raiders cross-appealed the order granting directed verdict on their cross-claim against Klein individually.

In 1984 the Ninth Circuit Court of Appeals affirmed the federal district court judgment of antitrust liability and injunction favoring the Raiders and L.A. Coliseum. (*Los Angeles Memorial Coliseum Com'n v. N.F.L.* (9th Cir. 1984) 726 F.2d 1381.) The Raiders' cross-appeal was dismissed in accord with their agreement to drop the cross-appeal if the judgment of antitrust liability and injunction was affirmed. (*Id.* at p. 1386, fn. 2.) The appellate court's opinion noted the evidence showed NFL member clubs entered an agreement (the NFL constitution and bylaws) which was intended to harm or unreasonably restrain competition and which actually caused injury to competition. (*Id.* at p. 1391 et seq.)[1]

## II

## KLEIN'S LAWSUIT FOR MALICIOUS PROSECUTION

### A

### PLEADING

In January 1984 Klein sued the Raiders and Davis for malicious prosecution of the federal cross-claim against Klein individually.[2] Klein alleged the cross-claim "singled out" Klein individually "for separate, specific and malicious opprobrium different in kind and in degree from the other general allegations" of the cross-claim. Klein alleged the malicious prosecution

---

[1] In May 1983 after bifurcated trial on the damages issue, the jury eventually awarded the Raiders $11,550,000 and the L.A. Coliseum $4,860,000. The court trebled those awards. The NFL appealed. That appeal was decided in *Los Angeles Memorial Coliseum Com'n v. NFL* (9th Cir. 1986) 791 F.2d 1356.

[2] Klein's complaint also attempted to allege causes of action for abuse of process and intentional infliction of emotional distress. The court granted summary judgment favoring the Raiders and Davis on Klein's cause of action for abuse of process. The court granted judgment on the pleadings favoring the Raiders and Davis on Klein's claim for intentional infliction of emotional distress. Those rulings are not at issue on this appeal.

caused him pain and suffering, including the heart attack sustained while testifying to defend himself from the malicious charges.

## B

### TRIAL

Klein's lawsuit was tried to a jury. After trial the jury unanimously awarded Klein $5,048,606.82 compensatory damages against the Raiders and Davis. Later the jury by a 9 to 3 vote awarded Klein $5 million punitive damages.

## C

### POST-TRIAL MOTIONS

The Raiders and Davis sought judgment notwithstanding the verdict and a new trial. The court denied their motion for judgment notwithstanding the verdict. The court granted the motion for new trial with the condition the motion would be denied if Klein accepted a remittitur of $4 million each from the jury's compensatory and punitive damages awards. Klein accepted the remittitur.

The Raiders and Davis appeal denial of their motion for judgment notwithstanding the verdict and the judgment as reduced. Klein appeals the conditional order granting new trial.

## III

### APPEAL BY THE RAIDERS AND DAVIS

■ To establish a cause of action for malicious prosecution of a civil proceeding, the plaintiff must demonstrate " 'the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' " (*Sheldon Appel Co.* v. *Albert & Oliker* (1989) 47 Cal.3d 863, 871-872 [254 Cal.Rptr. 336, 765 P.2d 498],[3] citing *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) Thus, Klein had the burden to prove the Raiders acted without probable cause in prosecuting their federal cross-claim against him individ-

---

[3] As will appear, this recent Supreme Court decision clarifying the law of malicious prosecution is central to our disposition. In that regard, our analytical task has been far simpler than that which faced the able trial judge who heard this complex and hard-fought case before the Supreme Court's opinion.

ually. (*Jacques Interiors* v. *Petrak* (1987) 188 Cal.App.3d 1363, 1369 [234 Cal.Rptr. 44].)

██ The Raiders and Davis contend the court erred in submitting the issue of probable cause to the jury, in receiving expert testimony about the legal permissibility of naming Klein individually as a cross-defendant in the federal case, and in declining to find Klein did not present substantial evidence of lack of probable cause. We agree. ██ ██ ██ ██ ██ The judgment must be reversed because the court should have found as a matter of law the Raiders had probable cause to bring the federal cross-claim against Klein individually.[4]

A

### LACK OF PROBABLE CAUSE WAS LEGAL ISSUE FOR COURT DETERMINATION

Traditionally the existence or absence of probable cause has been viewed as a question of law for determination by the court. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 875.) "To avoid improperly deterring individuals from resorting to the courts for the resolution of disputes, the common law affords litigants the assurance that tort liability will not be imposed for filing a lawsuit unless *a court* subsequently determines that the institution of the action was without probable cause. [Citations. Italics in original.] If the court determines that there was probable cause to institute the prior action, the malicious prosecution action fails, *whether or not there is evidence that the prior suit was maliciously motivated*. [Citations.]" (*Ibid.,* italics added.) "[T]he probable cause element calls on the trial court to make an objective determination of the 'reasonableness' of the defendant's conduct, i.e., to determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable. The resolution of that question of law calls for the application of an *objective* standard to the facts on which the defendant acted." (*Id.* at p. 878, italics in original.)

In some cases a defendant's subjective belief may be relevant to the probable cause issue. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47

---

[4] We reject Klein's contention that by participating in drafting the jury instruction on probable cause the Raiders and Davis waived any appellate attack involving the probable cause issue. Nothing in their participation in drafting the jury instruction suggests the Raiders and Davis acquiesced in the court's ruling the probable cause issue should go to the jury. Participation by the Raiders and Davis in drafting the jury instruction on probable cause was not an agreement the court was right. Instead, such involvement by the Raiders and Davis constituted an accommodation to the reality the litigation was at a stage where they had lost on their contention probable cause was a question of law. Under those circumstances the Raiders and Davis simply made a tactical decision to continue participating in the trial on the battleground defined by the court.

Cal.3d at p. 879.) However, in those cases such subjective belief relates to "the defendant's belief in, or knowledge of, *a given state of facts,* and not to the defendant's belief in, or evaluation of, *the legal merits of the claim.*" (*Ibid.,* italics in original.)

Where there is a factual dispute as to the state of the defendant's knowledge and the existence of probable cause turns on resolving that dispute, the jury must resolve the threshold question of the defendant's factual knowledge or belief. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 881.) When "there is evidence that the defendant may have known that the factual allegations on which his action depended were untrue, the jury must determine what facts the defendant knew before the trial court can determine the legal question whether such facts constituted probable cause to institute the challenged proceeding. . . . [W]hen the state of the defendant's factual knowledge is resolved or undisputed, it is the court which decides whether such facts constitute probable cause or not." (*Ibid.*)

The wrongful acts set forth in the Raiders' federal cross-claim were alleged to have been committed by all cross-defendants. The cross-claim did not allege Klein individually committed any additional specific wrongful act not committed by the other cross-defendants. Klein concedes there was no dispute he was "alleged to have conspired to violate the Sherman Act on the basis of actions conducted *through and for the Chargers*" and he "carried on all of his activities on behalf of the Chargers." Ultimately the Chargers were held liable for wrongful acts committed by Klein on their behalf. Klein has not demonstrated the existence of any reasonable factual dispute as to the Raiders' knowledge of those acts. Klein has not directed us to anything in the record suggesting the Raiders knew those factual allegations in their cross-claim were untrue. Thus, Klein's contention the Raiders lacked probable cause to bring their cross-claim against him individually is not based upon any reasonable factual dispute. Instead, Klein's contention rests upon his interpretation of substantive antitrust and tort law applicable to the Raiders' cross-claim against him individually. Accordingly, the superior court should have determined the probable cause as a matter of law under an objective standard. (*Sheldon Appel* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 881.)

## B

### RAIDERS' CROSS-CLAIM AGAINST KLEIN DID NOT LACK PROBABLE CAUSE

We need not remand the matter to the trial court because we may resolve the determinative legal question whether there was probable cause to file the federal cross-claim against Klein. (*Sheldon Appel Co.* v. *Albert &*

*Oliker, supra,* 47 Cal.3d at pp. 884-885.) ■ In actions alleging malicious prosecution of an earlier civil suit, the law seeks to protect legally tenable claims for relief. (*Id.* at p. 885.) In evaluating whether there was probable cause for malicious prosecution purposes, the standard is "whether any reasonable attorney would have thought the claim tenable." (*Id.* at p. 886.) Further, in making such determination we must properly consider the evolutionary potential of legal principles. (*Ibid.*)

■ We conclude the federal cross-claim pursued by the Raiders against Klein individually —although ultimately unsuccessful —was legally tenable and thus supported by probable cause. In reaching our conclusion, we do not determine the appropriate legal resolution of the Raiders' cross-claim against Klein individually. We simply survey relevant decisional and statutory authority to decide whether a reasonable attorney could think tenable the theory Klein could be held individually liable for antitrust violation and interference based precisely on the acts he committed on behalf of the Chargers.

1

### RAIDERS' CROSS-CLAIM FOR ANTITRUST VIOLATION

According to Klein, the Raiders' antitrust theory against him individually was untenable because an "individual cannot be joined as a conspirator defendant with his business entity in an action alleging a violation of the Sherman Act, when that individual is alleged to have acted *only on behalf of the business entity with whom he is alleged to have conspired.*" Klein cites *Copperweld Corp.* v. *Independence Tube Corp.* (1984) 476 U.S. 752, 759 [81 L.Ed.2d 628, 635-636, 104 S.Ct. 2731]; *Joseph E. Seagram & Sons, Inc.* v. *Hawaiian Oke & Liquors, Ltd.* (9th Cir. 1969) 416 F.2d 71, 84; and *Chapman* v. *Rudd Paint & Varnish Company* (9th Cir. 1969) 409 F.2d 635, 643. Klein's reliance on those cases is unavailing. Those cases essentially involve the issue whether an "intra-enterprise conspiracy" will support antitrust liability. (*Copperweld Corp.* v. *Independence Tube Corp., supra,* 476 U.S. at p. 759 [81 L.Ed.2d at pp. 635-636]; *Joseph E. Seagram & Sons, Inc.* v. *Hawaiian Oke & Liquors, Ltd., supra,* 416 F.2d at p. 82.) ■ Generally "officers or employees of the same firm do not provide the plurality of actors imperative" for an actionable conspiracy under antitrust law. (*Copperweld Corp.* v. *Independence Tube Corp., supra,* 476 U.S. at p. 769 [81 L.Ed.2d at p. 642].) ■ However, the Raiders' federal cross-claim did not allege Klein individually simply conspired with the Chargers. Instead, the Raiders claimed Klein individually also conspired with parties not agents or employees of the Chargers—the NFL, its member clubs and two other individuals.

Decisional authority could lead a reasonable attorney to think tenable the Raiders' theory Klein could be individually liable on their antitrust claim regardless whether the Chargers may have also participated in the conspiracy. In *Deaktor* v. *Fox Grocery Company* (W.D.Pa. 1971) 332 F.Supp. 536, affirmed (3d Cir. 1973) 475 F.2d 1112, certiorari denied 414 U.S. 867 [38 L.Ed.2d 86, 94 S.Ct. 65], the court rejected a contention similar to Klein's assertion he could not be held liable individually for antitrust conspiracy because he was alleged to have acted only on behalf of the Chargers. The court stated: "Plaintiffs' position as to John F. Fox's liability is that as an officer and director of Fox Grocery, he is individually liable for that corporation's wrongful acts when he was the agency through which those acts were committed. The defendants take the position that John F. Fox incurs no individual liability for wrongful acts of the corporation. In support of this position the defendant has cited a group of cases which have held that a corporate officer cannot conspire to violate the antitrust laws with his own corporation absent the participation of other independent business entities. Defendants argue that the facts of this case are within the rule of the cited cases. We believe our discussion of co-conspirators set out in connection with the motion to dismiss Count I for failure to state a claim applies here to the position of the individual defendant. The conspiracy asserted by plaintiffs was among Fox Grocery, John Fox, E.D.Foods, the Deaktors and other Foodland stores and their operators.

"Defendant Fox appears to contend that he is not individually liable for antitrust violations or other tortious conduct when he commits such acts as an officer of the corporation on behalf of the corporation. We are unaware of any authority which would support such a theory. To the contrary, we believe it is well established that an agent is individually liable for torts committed by him pursuant to his agency, see, Restatement of Agency, 2d § 343 (1957).

" 'An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal. . . .'

"Under the antitrust laws the liability of the participating officers of the offending corporation has long been established, Hartford-Empire Co. v. United States, 323 U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 (1945)." (332 F.Supp. at pp. 541-542.)

In *Bergjans Farm Dairy Co.* v. *Sanitary Milk Producers* (E.D.Mo. 1965) 241 F.Supp. 476, 482, affirmed (8th Cir. 1966) 368 F.2d 679, the court stated: "Corporate officers, directors and agents are personally liable for acts of the corporation that violate the antitrust laws if they participate in those actions or authorize them. Hartford-Empire Co. v. United States, 323

U.S. 386, 65 S.Ct. 373, 89 L.Ed. 322 (1945)." The court found a corporation, its treasurer and general manager conspired with outside parties to violate antitrust law. (*Id.* at pp. 482-483.)

In *Tillamook Cheese & Dairy Ass'n* v. *Tillamook Co. Cream. Ass'n* (9th Cir. 1966) 358 F.2d 115, 118, the court stated "individuals through whom a corporation acts and who shape its intentions can be held liable on a charge of attempted monopolization." In *Murphy Tugboat* v. *Shipowners & Merchants Towboat* (N.D. Cal. 1979) 467 F.Supp. 841, 851-853, the court stated a corporate officer or director may be held personally liable for antitrust violations for his specific acts of participation in inherently wrongful conduct. (Accord *Brown* v. *Donco Enterprises, Inc.* (6th Cir. 1986) 783 F.2d 644, 646-647;[5] *C & W Const.* v. *Brotherhood of Carpenters & Joiners* (D. Hawaii 1988) 687 F.Supp. 1453, 1465.)

Additional decisional authority supports the tenability of the Raiders' antitrust cross-claim against Klein individually. In *Poller* v. *Columbia Broadcasting* (1962) 368 U.S. 464, 469 [7 L.Ed.2d 458, 462, 82 S.Ct. 486], the court stated: "It is argued that CBS cannot conspire with itself. However, this begs the question for the allegation is that independent parties, i.e., Holt and Bartell, conspired with CBS and its officers." In *Johnston* v. *Baker* (3d Cir. 1971) 445 F.2d 424, 426, the appealing defendants contended a corporation may not be liable for "a conspiracy with its officers and agents when they are acting solely for the corporation and not for their own purposes." In affirming the judgment, the appellate court noted the conspiracy claimed by the plaintiff consisted of acts committed by the corporation, its employees *and at least one party not an employee or agent of the corporation.* (*Id.* at pp. 426-427.) In *Tondas* v. *Amateur Hockey Ass'n of U.S.* (W.D.N.Y. 1977) 438 F.Supp. 310, 315, the court stated: "A cause of action in a private antitrust suit for treble damages is a tort action. [Citation.] As such, a conspirator in a private antitrust action is a joint tortfeasor and is jointly and severally liable. An action brought pursuant to section 4 of the Clayton Act will thus lie against any party who committed the alleged offense. [Citation.] If Cotter [a director of the Amherst Youth Hockey Association, Inc.] himself participated in the alleged conspiracy, he would be personally liable under the antitrust laws regardless of whether another party, such as the Amherst Youth Hockey Association, Inc. which might have also participated in the conspiracy, was or was not sued by the injured party."[6]

---

[5] In *Brown* v. *Donco Enterprises, Inc., supra,* 783 F.2d at page 646, the court stated: "It is undisputed that a corporation's officers and agents may be held individually liable for corporate actions that violate the antitrust laws if they authorize or participate in the unlawful acts."

[6] An allegation corporate defendants *and their agent* conspired with a third party was noted without adverse judicial comment in *Copperweld Corp.* v. *Independence Tube Corp., supra,* 467 U.S. at pages 757-758, footnote 1 [81 L.Ed.2d at page 635].

Thus, ample decisional authority existed from which a reasonable attorney could conclude Klein could be held personally liable precisely for the wrongful acts he committed on the Chargers' behalf. In light of those existing authorities, we conclude the Raiders' cross-claim for antitrust violation against Klein individually was legally tenable.

In opposing Klein's motion for directed verdict in the federal district court, the Raiders' attorney stated the chief executives who committed wrongful acts on behalf of each NFL club could have been named as individual cross-defendants although the Raiders' cross-claim did not do so. Counsel said the Raiders decided to name the Chargers' chief executive Klein as an individual cross-defendant because Klein was "a particularly articulate spokesman." Evidence at the trial of Klein's lawsuit for malicious prosecution showed counsel for the Raiders on their federal cross-claim had stated "we didn't go on the basis of the fact that Gene Klein was a general partner. We went on the basis that he was a ringleader, by his actions." The Raiders' reasons for selecting Klein as an individual cross-defendant from among all potential individual cross-defendants—including an opinion Klein was a "spokesman" or "ringleader"—might be relevant were it necessary to reach the issue of malice. (*Sheldon Appel Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at p. 883.) However, such reasons are superfluous and irrelevant to the issue of the existence or absence of probable cause.

The probable cause issue depends upon the tenability of the theory pleaded in the Raiders' cross-claim that Klein could be held individually liable for committing acts violating antitrust laws. The cross-claim did not allege Klein committed specific wrongful acts separate and apart from those committed by the Chargers and all other cross-defendants. The Chargers were held liable for antitrust violations based upon wrongful acts Klein committed on their behalf. Under existing decisional authority, the theory Klein could be held individually liable for such acts was tenable. Klein's acting as a conspiracy "ringleader" was not inconsistent with his acting on the Chargers' behalf. Counsel's thinking the Chargers' principal Klein to be a "ringleader" and seeking unsuccessfully to prove several specific acts consistent with such opinion does not impair the objective tenability of the Raiders' theory Klein was individually liable for committing antitrust violations.

2

### Raiders' Cross-claim for Tortious Interference

■ According to Klein, the Raiders' theory of contractual interference against him individually was untenable because he was exempt from liability under the California doctrine of "manager's privilege" discussed in *Los*

*Angeles Airways, Inc.* v. *Davis* (9th Cir. 1982) 687 F.2d 321. Klein asserts the "manager's privilege" applies to his activities as a Chargers officer seeking to enforce the NFL constitution and bylaws signed by the Chargers and not by Klein individually. However, Klein's reliance on *Los Angeles Airways, Inc.* is misplaced. The "manager's privilege" did not exempt Klein from liability for tortious interference with the Raiders' contractual relationships or prospective advantage with the L.A. Coliseum. Klein effectively seeks to extend the "manager's privilege" far beyond the facts of *Los Angeles Airways, Inc.* or underlying California decisional authority.

In *Los Angeles Airways, Inc.* v. *Davis, supra,* 687 F.2d 321, the court held a company's manager may not be liable to a third party for inducing the company to breach its contract with the third party. Citing *Olivet* v. *Frischling* (1980) 104 Cal.App.3d 831, 840-841 [164 Cal.Rptr. 87], and *Marin* v. *Jacuzzi* (1964) 224 Cal.App.2d 549, 553 [36 Cal.Rptr. 880], the court in *Los Angeles Airways, Inc.* stated at page 326: "[A] manager is said to be privileged to induce the breach of an employment contract between his employer and another employee. . . . The privilege also extends to non-employees who serve as business advisors or agents and is applicable to advice relating to contracts generally, not just employment agreements. [Citations.] A business advisor may counsel his principal to breach a contract that he reasonably believes to be harmful to his principal's best interests. [Citation.]" The court noted the "privilege is designed in part to protect the important interests served by the confidential relationship between a fiduciary and his principal. [Citations.]" (*Id.* at p. 325.)

Decisional authority and academic comment could lead a reasonable attorney to think tenable the Raiders' theory Klein was individually liable on their interference claim. The Raiders' cross-claim for interference against Klein individually was not based upon an allegation Klein induced the Chargers to breach any contractual or prospectively advantageous relationship between the Chargers and the Raiders. Instead, the cross-claim alleged Klein tortiously interfered—and induced the Chargers to interfere tortiously—with the relationships between two outside parties, namely the Raiders and the L.A. Coliseum. The "manager's privilege" did not exempt Klein from individual liability to the Raiders for his tort. (*Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202 [14 Cal.Rptr. 294, 363 P.2d 310]; *Golden* v. *Anderson* (1967) 256 Cal.App.2d 714 [64 Cal.Rptr. 404].

In *Herron* v. *State Farm Mutual Ins. Co., supra,* 56 Cal.2d at page 205, the court stated: "An action will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. [Citations.]" In *Herron,* the appellate court ordered the superior court to

overrule a demurrer to a complaint against an insurance company *and its agent* for intentional interference with contractual relations.

In *Golden* v. *Anderson, supra,* 256 Cal.App.2d 714, the appellate court reversed summary judgment favoring three individual defendants. The superior court had concluded the three individual defendants were immune from liability for interference with contract because the evidence showed they were acting in their representative capacities as managing agents of the defendant corporations. (*Id.* at p. 719.) The appellate court held: "The court erred in so concluding. Plaintiff's action is for an intentional tort. All persons who are shown to have participated are liable for the full amount of the damages suffered. [Citation.] 'When conspiring corporate officials act tortiously and individuals are injured as a proximate result, such tortfeasors are liable to the injured persons even though the corporation may also be liable. . . . [Citations.]' (*Price* v. *Hibbs,* 225 Cal.App.2d 209, 222.)" (*Golden* v. *Anderson, supra,* at pp. 719-720, cited with approval by *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773, 785 [157 Cal.Rptr. 392, 598 P.2d 45]; *Mayes* v. *Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69, 78 [154 Cal.Rptr. 43].)

An academic commentator has written: "[W]here the employee commits a tort, he is personally liable except where he commits the tort of intentionally interfering with his employer's contracts. Even where the employee acts on behalf of his employer in interfering with contracts to which the employer is not a party, he is liable for intentional interference." (Gamer, *The Agent's Privilege to Interfere Intentionally with Contractual Relations: A Reappraisal of California Law* (1976) 12 Cal. Western L.Rev. 475, 484.) The commentator noted: "Where neither the employer nor his employee is a party to the contract with which the employee is interfering, there is no privilege. It is one thing for an employee to deal with his employer's contracts but quite another for him to reach out and meddle with contracts to which his employer has no rightful interest. The cases do not clearly articulate this distinction but it can be found nevertheless in the holdings. *See, e.g.,* Herron v. State Farm Mutual Ins. Co., 56 Cal.2d 202 (1961); Golden v. Anderson, 256 Cal.App.2d 714 (2d Dist. 1967)." (*Ibid.,* fn. 43.)

In light of the existing authorities, we conclude the Raiders' cross-claim for interference against Klein individually was legally tenable.

3

## CONCLUSION

Although the federal district court evidently concluded the judicial decisions summarized above should not be applied to afford the Raiders

recovery from Klein individually, such authorities could have led reasonable attorneys to think tenable the Raiders' cross-claim's theory Klein was individually liable for antitrust violations and interference. Accordingly, we conclude the Raiders' cross-claim against Klein individually was not instituted without probable cause.[7]

## C

### OTHER APPELLATE CONTENTIONS BY THE RAIDERS AND DAVIS

In light of our holding the Raiders' cross-claim against Klein individually did not lack probable cause, we need not decide the merits of the other contentions raised by the Raiders and Davis. However, we will comment briefly on the issues of expert testimony and jury instructions.

### 1

### EXPERT TESTIMONY AND PROBABLE CAUSE

■ The superior court permitted Klein to present the opinion of an expert witness about the doctrine of intracorporate conspiracy with regard to the antitrust claim. Later the Raiders and Davis presented expert testimony about probable cause. In rebuttal Klein presented another expert witness who testified the "manager's privilege" exempted Klein from liability on the interference claim.

In *Sheldon Appeal Co.* v. *Albert & Oliker, supra,* 47 Cal.3d at page 884, the Supreme Court stated: "[T]he court, over objection, permitted attorneys to be called as expert witnesses to give their opinions as to whether a reasonable attorney would conclude that the claims advanced in the prior action were tenable. [¶] In light of our earlier discussion, explaining that the objective tenability of the prior action is a question of law to be determined by the court, it is clear that the trial court erred in admitting this evidence. '[I]t is thoroughly established that experts may not give opinions on matters which are essentially within the province of the court to decide.' [Citations.] We agree with the prior cases which have concluded that this general principle applies to the probable cause element of the malicious prosecution tort. [Citations.]"

---

[7] Klein contends the federal district court's directed verdict in his favor has a res judicata or collateral estoppel effect on the issue of probable cause. It does not. The directed verdict involved only an ultimate assessment of liability. The issue before us is whether a reasonable attorney could think tenable the Raiders' claim Klein could be individually liable.

## 2

### JURY INSTRUCTION ON PROBABLE CAUSE

The court instructed the jury on probable cause.[8] The instruction's paragraphs (1) and (3) relating to each count—claimed by Klein to instruct the jury on the threshold factual question of the Raiders' factual knowledge or belief—do not adequately distinguish between the Raiders' belief in, or knowledge of, a given state of facts underlying the charges in their cross-claim and the Raiders' belief in, or evaluation of, the legal merits of their cross-claim. (*Sheldon Appeal Co.* v. *Albert & Oliker, supra,* 47 Cal.3d 863.) Further, the instruction's paragraphs (2) and (4) manifestly address a question of law. However, we need not linger in discussing the instruction's propriety because in any event the court erred in submitting the issue of probable cause to the jury.

## IV

### KLEIN'S APPEAL IS MOOT

Klein has appealed the conditional order granting new trial. However, Klein's appeal is moot in light of our conclusion the Raiders and Davis are entitled to judgment as a matter of law because the Raiders' federal cross-claim was not instituted without probable cause.

### DISPOSITION

The judgment favoring Klein is reversed. The superior court is directed to enter judgment favoring the Raiders and Davis.

Klein's appeal is dismissed as moot.

The Raiders and Davis shall have costs on appeal.

Work, J., and Nares, J., concurred.

---

[8] The text of the jury instruction on probable cause is set out at Appendix A.

APPENDIX A

"The cross-claim filed on July 15, 1980 by Defendant OAKLAND RAIDERS contained two alternative *theories of recovery which have been* referred to as either counts or causes of action.

"To constitute probable cause for the initiation and maintenance of Count One of the cross-claim, which alleged a conspiracy to violate the Sherman Act, at least nine of you must be convinced that the evidence establishes each of the following facts:

"(1) That up to and including July 15, 1980 (the date when the cross-claim was filed), Defendants, in good faith, believed EUGENE KLEIN, as an individual, had committed acts which were a part and in furtherance of the conspiracy to violate the Sherman Antitrust Act;

"(2) That up to and including July 15, 1980, Defendants' belief that the acts by EUGENE KLEIN, as an individual, were a part and in furtherance of the conspiracy to violate the Sherman Antitrust Act was a belief that was reasonable and that a reasonable person could have held based on the information then known to Defendants;

"(3) That the prosecution of the cross-claim against EUGENE KLEIN between July 15, 1980 and June 26, 1981, (when Judge Pregerson dismissed him from the suit), was based on Defendants' good faith belief that EUGENE KLEIN, as an individual, had committed acts which were a part and in furtherance of the conspiracy to violate the Sherman Antitrust Act; and

"(4) That Defendants' belief between *July 15, 1980 and June 26, 1981 that the acts of* EUGENE KLEIN, as an individual, were a part and in furtherance of the conspiracy alleged to violate the Sherman Antitrust Act was a belief that was reasonable and that a reasonable person could have held based on the information known to Defendants.

"If you find from all of the evidence that the foregoing facts are true, you must find there was probable cause for the initiation and maintenance of Count One of the cross-claim against EUGENE KLEIN, as an individual.

"If you find that any fact is not true, or any combination thereof is not true, you must then find that there was not probable cause for the initiation or maintenance of Count One of the cross-claim against EUGENE KLEIN, as an individual.

"To constitute probable cause for the initiation and maintenance of Count Two of the cross-claim which alleged a conspiracy to intentionally and wrongfully interfere with Defendants' contractual relations, at least nine (9) of you must be convinced that the evidence establishes each of the following facts:

"(1) That up to and including July 15, 1980 (the date when the cross-claim was filed), Defendants, in good faith, believed EUGENE KLEIN, as an individual, had committed acts which were a part and in furtherance of the conspiracy to intentionally and wrongfully interfere with Defendants' contractual relations;

"(2) That up to and including July 15, 1980, Defendants' belief that the acts by EUGENE KLEIN, as an individual, were a part and in furtherance of the conspiracy to intentionally and wrongfully interfere with Defendants' contractual relations was a belief that was reasonable *and that a reasonable person could have held based on the information then known to De*fendants.

"(3) That the prosecution of the cross-claim against EUGENE KLEIN between July 15, 1980 and June 26, 1981 (when Judge Pregerson dismissed him from the suit), was based on Defendants' good faith belief that EUGENE KLEIN, as an individual, had committed acts which were a part and in furtherance of the conspiracy to intentionally and wrongfully interfere with Defendants' contractual relations; and

"(4) That Defendants' belief between July 15, 1980 and June 26, 1981 that the acts of EUGENE KLEIN, as an individual, were a part and in furtherance of the conspiracy to intentionally and wrongfully interfere with Defendants' contractual relations was a belief that was reasonable and that a reasonable person could have held based on the information then known.

"If you find from all of the evidence that the foregoing facts are true, you must find there was probable cause for the initiation and maintenance of Count Two of the cross-claim against EUGENE KLEIN .

"If you find that any fact is not true, you must then find that there was not probable cause for the initiation or maintenance of Count Two of the cross-claim against EUGENE KLEIN."